679 F.2d 13
 6 Collier Bankr.Cas.2d 875, 9 Bankr.Ct.Dec. 245,
Bankr. L. Rep. P 68,714
 Miriam H. McCANNON, Appellant,
v.
David W. MARSTON, Trustee, the Trustees of the Central
States Southeast and Southwest Areas Pension Fund and Hotel
Associates, Inc., Robert B. Miller, Stanton R. Miller, a
partnership, t/a "The Drake".
 No. 81-2490.
 United States Court of Appeals,
Third Circuit.
 Argued May 14, 1982.
Decided June 2, 1982.
 
 Jan Z. Krasnowiecki (argued), Janet M. Sonnenfeld, Philadelphia, Pa., for appellant, Miriam H. McCannon.
 John S. Estey, Alison Douglas Knox (argued), Philadelphia, Pa., for appellee David W. Marston, trustee; Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., of counsel.
 Before GIBBONS and HUNTER, Circuit Judges, and GERRY, District Judge.*
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Among the provisions of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq. (Supp. III 1979) (the Code), that require reference to state law is the "strong arm clause" of Section 544. This section grants the trustee the state law defined rights and powers of certain creditors and transferees of property. In this case, both the bankruptcy and district courts interpreted the language of the Code to permit a trustee to avoid an equitable interest in real property (arising from a purchase agreement) of a person whose possession of that property provided constructive notice of her rights under state law. Concluding that Section 544 does not contemplate such a result, we reverse.
 
 I.
 
 2
 On March 19, 1973, Miriam H. McCannon entered into an agreement with a partnership doing business as The Drake Hotel (the debtor) for the sale of a condominium apartment and of a certain percentage of the common areas in that hotel. The agreement contained a contingency that the hotel, located in Philadelphia, be declared a valid condominium according to the terms of the then applicable Unit Property Act, Pa.Stat.Ann. tit. 68, § 700.101 et seq. (Purdon 1965) (repealed). That contingency was satisfied later in 1973.
 
 
 3
 Pursuant to the agreement, McCannon paid a deposit of $500 toward the purchase price of $17,988. She began residence in the apartment in April of 1975 and resides there presently. The bankruptcy court found, however, that "(f)or a variety of reasons, settlement on the property has never taken place." In re Hotel Associates, Inc., 10 B.R. 668, 669 (Bkrtcy.E.D.Pa.1981). McCannon never recorded her agreement for sale.
 
 
 4
 In November of 1979, the debtor filed a petition under Chapter 11 of the Code, 11 U.S.C. § 1101 et seq. McCannon filed a complaint in February of 1981 seeking relief from the automatic stay imposed by Section 362 of the Code and requesting specific performance of the agreement to purchase the apartment. Holding that the trustee, as a bona fide purchaser without regard to any knowledge on his part, may avoid McCannon's interest in the property pursuant to Pennsylvania law and to Section 544(a)(3) of the Code, the bankruptcy court granted the trustee's motion for judgment at the close of the plaintiff's case. In re Hotel Associates, Inc., supra. The district court affirmed the bankruptcy court's judgment, employing the same interpretation of Section 544 and concluding that Section 365(i) did not apply. McCannon v. Marston, No. 81-1451 (E.D.Pa. Aug. 1, 1981). This appeal followed.
 
 II.
 The Code provides:
 
 5
 Trustee as lien creditor and as successor to certain creditors and purchasers
 
 
 6
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
 
 
 7
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
 
 
 8
 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and
 
 
 9
 (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.
 
 
 10
 11 U.S.C. § 544(a). At issue in this case is the interrelationship of the third clause concerning the rights of transferees of real property and the prepositional phrase "without regard to any knowledge of the trustee or of any creditor," an interrelationship of state and federal law.
 
 
 11
 The law of Pennsylvania considers a purchaser under a written agreement for the sale of real property to be the equitable owner of that property. E.g., Allardice v. McCain, 375 Pa. 528, 101 A.2d 385 (1953); Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85 (1949). After reviewing the contract, we find no fault with the conclusion of the bankruptcy court that McCannon acquired such an equitable interest once the condition that a valid condominium be created was satisfied.
 
 
 12
 Pennsylvania law gives subsequent purchasers of real property priority over the rights of prior purchasers if the subsequent purchasers are bona fide purchasers for value without notice. Record notice defeats the claims of a subsequent purchaser.[1] McCannon's equitable interest was unrecorded. However, in Pennsylvania, clear and open possession of real property generally constitutes constructive notice to subsequent purchasers of the rights of the party in possession. Such possession, even in the absence of recording, obliges any prospective subsequent purchaser to inquire into the possessor's claimed interests, equitable or legal, in that property. See, e.g., Kinch v. Fluke, 311 Pa. 405, 166 A. 905 (1933); Long John Silver's, Inc. v. Fiore, 255 Pa.Super. 183, 386 A.2d 569 (1978). Thus in Pennsylvania the rights of a subsequent purchaser do not take priority over those of one in clear and open possession of real property.
 
 
 13
 The bankruptcy and district courts, however, concluded that any notice which might be imputed to the trustee from possession is irrelevant because of the language of the above-quoted prepositional phrase in Section 544: "without regard to any knowledge of the trustee or of any creditor." Equating "knowledge" with "notice," both courts ruled that the trustee assumes the powers of a bona fide purchaser without notice, whether or not a transferee has given the rest of the world actual or constructive notice by possession.[2]
 
 
 14
 Although the word "knowledge" is not defined in the Code and the legislative history of its inclusion is scant, in our view Congress cannot have intended such an interpretation. Once a transferee of real property in Pennsylvania has given all potential subsequent purchasers actual or constructive notice of an interest in that property, nothing else need be done to protect against claims of future purchasers. According to the bankruptcy and district courts, however, nothing can be done to protect against the claims of a future trustee in bankruptcy who assumes the role of a hypothetical bona fide purchaser without actual knowledge. The trustee, under that interpretation of Section 544, has been clothed not only with the rights of a bona fide purchaser, but has been granted as well a substantial additional mantle of power not available to any actual subsequent purchaser in Pennsylvania. Such a conclusion is not to be lightly inferred.
 
 
 15
 That the words "without regard to any knowledge" were not meant by Congress to nullify all state law protections of holders of equitable interests is suggested both by the history of its inclusion in the statutory language and by other language within Section 544(a)(3).[3] The reference to the trustee's or creditors' knowledge appears to have originated out of a concern that actual knowledge might affect the trustee's status as a hypothetical judicial lien creditor. In a draft bankruptcy act prepared in 1973 by the Commission on Bankruptcy Laws of the United States, a note by the Commission explained that the trustee's status as hypothetical lien creditor should not be affected by any knowledge which he, personally, or any or all creditors may have. Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.93-137, Part II, 93rd Cong., 1st Sess. 160-61 & n.3 (1973). The note referred to an article by Professor Vern Countryman criticizing cases construing both the "strong arm" provision of the former Bankruptcy Act, Section 70(c), and Article 9 of the Uniform Commercial Code, holding that a trustee with actual knowledge of unperfected security interests could not avoid those interests despite his status as hypothetical lien creditor. See Countryman, The Use of State Law in Bankruptcy Cases, 47 N.Y.U.L.Rev. 631, 652-55 (1972). In 1977 Congress first provided the trustee with the status of bona fide purchaser of real property. At that time it inserted the clarification regarding the trustee's actual knowledge. See H.R. 6, 95th Cong., 1st Sess. (1977).
 
 
 16
 Viewed in the context of this history, congressional desire to disregard the trustee's knowledge of the debtor's previous transactions with various claimants is appropriately understood to respond to the Article 9 problems referred to by Professor Countryman, rather than to obliterate the rights of equitable owners in possession of real property. Further evidence that the latter result was not intended by Congress is found in the language of Section 544(a)(3). Congress was careful to modify the status of bona fide purchasers by inserting the words "against whom applicable law permits such transfer to be perfected." As explained in statements made by Representative Edwards of California and Senator DeConcini of Arizona, sponsors of the proposed Code:
 
 
 17
 Section 544(a)(3) modifies similar provisions contained in the House bill and Senate amendment so as not to require a creditor to perform the impossible in order to perfect his interest. Both the lien creditor test in section 544(a) (1), and the bona fide purchaser test in section 544(a)(3) should not require a transferee to perfect a transfer against an entity with respect to which applicable law does not permit perfection.
 
 
 18
 124 Cong.Rec.H.11097 (daily ed. Sept. 28, 1978); 124 Cong.Rec.S.17413 (daily ed. October 6, 1978). Such solicitude for transferees subject to laws not permitting perfection as to certain purchasers is not consistent with an interpretation of Section 544(a) that would ignore constructive notice under governing state law when a trustee was appointed.
 
 
 19
 One further point of dispute must be addressed. The trustee argues that the circumstances of McCannon's possession, as the occupant of one of many condominium apartments, a number of which were leased, are not constructive notice obliging a subsequent purchaser to inquire as to her interests. The only Pennsylvania cases cited, however, find no obligation to inquire in circumstances where the grantor was both record owner and in possession and where the one in possession was sharing possession with the record owner. Salvation Army Incorporated Trustees v. Lawson, 293 Pa. 459, 143 A. 113 (1928); Overly v. Hixon, 169 Pa.Super. 187, 82 A.2d 573 (1951). We believe that were the Pennsylvania Supreme Court asked to consider whether a subsequent purchaser of a condominium building had a duty to make inquiry as to the rights of persons in possession of apartments in that building, it would hold that such possession provides constructive notice, as a matter of law, no different than in the case of possession of a single family home.
 
 III.
 
 20
 There is further evidence of Congressional intent in Section 544(a)(3) involving a Code section not directly at issue in this appeal. Section 365 deals with the trustee's power to assume or reject executory contracts and unexpired leases of the debtor. It contains a subsection dealing specifically with executory contracts of the debtor for the sale of real property. Section 365(i) permits a purchaser who is in possession under such an executory contract that has been rejected by the trustee the choice of treating the contract as terminated or remaining in possession. In the latter case, the purchaser is obliged to continue making all payments due under the contract and the trustee must deliver title to the purchaser in accordance with the terms of the contract.
 
 
 21
 On this appeal, McCannon refers to this provision not as a separate ground for her specific performance request, since the trustee has not yet explicitly chosen to reject the contract, but as evidence of congressional concern for purchasers in possession. We agree that it is highly unlikely Congress would enact Section 365(i) while at the same time allowing the trustee to avoid, under Section 544(a)(3), the equitable interests of buyers in possession.
 
 
 22
 The district court held that Section 365(i) does not apply because McCannon's agreement of sale is not executory, and because, in any event, Section 365(i) was intended to protect only purchasers under land installment contracts. We disagree with both reasons.
 
 
 23
 The second sentence of the notes concerning Section 365 states that "(t)hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." Notes of Committee on the Judiciary, S.Rep.No.95-989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News, p. 5787. Under the agreement for purchase and sale of the apartment, McCannon has yet to furnish the amount of the purchase price above her $500 deposit, and the debtor has yet to transfer title. Plainly, some performance remains due on both sides.
 
 
 24
 Section 365(i) specifically concerns the case in which "the trustee rejects an executory contract of the debtor for the sale of real property under which the purchaser is in possession." The committee note regarding that subsection does begin with mention of installment sales contracts for the purchase of real property: "Subsection (i) gives a purchaser of real property under a land installment sales contract similar protections (to those of subsection (h) concerning unexpired leases of real property)." S.Rep.No.95-989, supra, at 60, U.S.Code Cong. & Admin.News, p. 5846. This reference to installment sales contracts, however, cannot be read as limiting the application of the general language in this subsection. It is understandable that a committee note would single out such contracts for mention, since they are common instances in which the purchaser would come into possession before the contract is fully executed. But nothing in either the language of the subsection or the obvious policy behind it, of obviating the hardship involved in forcing a purchaser already in possession to leave, suggests that the section is inapplicable to McCannon.
 
 IV.
 
 25
 The judgment of the district court will be reversed, and the case remanded for consideration of other objections to granting specific performance of McCannon's agreement with the debtor which were not considered in the bankruptcy court.
 
 
 
 *
 Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The Pennsylvania recording statute provides:
 Failure to record conveyance
 All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.
 Pa.Stat.Ann. tit. 21, § 351 (Purdon 1955).
 
 
 [2]
 The reasoning of the bankruptcy and district courts would apparently allow a trustee to avoid even the interests of those who had given proper record notice
 
 
 [3]
 For additional evidence, see the discussion of Code Section 365, infra