**In re Thomas Edward GRAHAM, Debtor.**

**Wayne J. LENNINGTON, Trustee, Appellant,**

v.

**Douglas GRAHAM and Barbara C. Walters, Appellees.**

Bankruptcy No. IP 84–3846J.
Adv. No. IP 87–326.
No. IP 88–386–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 1, 1990.

K.C. Cohen, Cohen & Malad, Indianapolis, Ind., for appellant.

William Catlin Whitehead, Whitehead & Whitehead, Anderson, Ind., for appellees.

ORDER ON APPEAL FROM DECISION OF BANKRUPTCY COURT

McKINNEY, District Judge.

This cause comes before the district court on the appeal of the trustee from an adverse decision of the bankruptcy court in a Chapter 7 proceeding. The Court, having read the briefs submitted by the parties and being duly advised of the issue in need of resolution, REVERSES the decision of the bankruptcy court and REMANDS this

cause for further proceedings consistent with this Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The trustee-appellant, Wayne J. Lennington (the "Trustee"), does not dispute the bankruptcy court's findings of fact as set forth in its Order of March 15, 1988, except for a portion of paragraph six dealing with corporate ratification. The appellees, Douglas Graham ("Graham") and Barbara C. Walters ("Walters") (collectively the "siblings") make no attempt to dispute the bankruptcy court's factual findings. Therefore, for the purpose of setting forth a brief factual background, this Court will accept the undisputed facts as found by the bankruptcy court.[1]

This matter initially arose when the Trustee filed a complaint August 26, 1987, to sell Lots 15 and 16 in the Miller and Judd Addition to the city of Anderson, Indiana. The bankruptcy court, for reasons set forth below and more fully in that court's Order of March 15, 1988, held that the estate, as successor to the interests of the debtor, Thomas Edward Graham (the "Debtor"), had a one-third interest as a tenant in common with Graham and Walters as to both Lots 15 and 16. The Trustee appeals only the portion of the bankruptcy court's Order that relates to Lot 16. Thus, the issue in need of resolution is the proper ownership of Lot 16.

As stated by the court below, William F. Graham ("William Graham") was the father of the Debtor and his siblings, Graham and Walters. Prior to 1970, William Graham, president and sole shareholder of Purnell–Graham Co., Inc. ("P–G"), held title to Lot 15. P–G held title to Lot 16. William Graham died October 24, 1970, and Kathryn I. Graham ("Kathryn Graham") was appointed executrix of his estate. Lot 15 was transferred to the Anderson Banking Company ("ABC") as trustee under the family trust established in William Gra-

ham's will, and all 235 shares of P–G stock went to Kathryn Graham. The final report filed in William Graham's estate does not mention Lot 16.

On January 24, 1978, the Debtor, as president of P–G, and Kathryn Graham, as secretary, executed a quitclaim deed of Lot 16 to ABC, as trustee under the will of William Graham. On February 12, 1982, ABC, as trustee, executed a quitclaim deed of both Lots 15 and 16 to the Debtor and his siblings. Neither of these deeds were recorded until December 10, 1987, the date of the bankruptcy hearing on this matter. ABC, as trustee, obtained a Commitment for Title Insurance from Ticor Title Insurance Company October 21, 1987. (Trustee's Exhibit 5.) Attached to the Commitment was the February 12, 1982, deed from ABC to the Debtor and his siblings, and the January 24, 1978, deed from P–G to ABC as trustee.

Based upon these facts, the Trustee contended that the Debtor held absolute title to Lot 16 because of his ownership of all of the shares of P–G at the time he filed his bankruptcy. The siblings, on the other hand, argued that they owned Lot 16 jointly with the Debtor because the lot became part of the family trust established by the will of William Graham.

The Trustee brought this action in the bankruptcy court pursuant to 11 U.S.C. § 544(a)(3), which gives a trustee the rights and powers of a bona fide purchaser ("BFP"), including the power to avoid any transfer of property of the debtor that is voidable by a BFP. The bankruptcy court, however, held that the Trustee was not a BFP because he had actual knowledge of the transfer by P–G to ABC, and ABC to the debtor, because of his post-filing receipt of the commitment for title insurance. (March 15, 1988, Order, p. 7, para. 6.) Under Indiana law,[2] the court held, a trustee can be a BFP only if he had neither actual or constructive notice of the transfer by P–G to ABC as trustee and the subsequent

---

**1.** As discussed more fully in Part III of this Order, this Court must accept the bankruptcy court's findings of fact unless they are "clearly erroneous."

**2.** Whether a trustee qualifies as a BFP is a question of state law. *In re: Richardson,* 17 C.B.C.2d 443, 75 B.R. 601 (Bankr.C.D.Ill.1987).

transfer from ABC to the Debtor and his siblings. Accordingly, the Trustee could not avoid the transfer of Lot 16, and the estate, as successor to the interests of the Debtor, was held to have a one-third interest as tenant in common with Graham and Walters.

This matter was referred to the bankruptcy court pursuant to an Order of referral dated July 11, 1984. This Court has jurisdiction of the appeal in accordance with 28 U.S.C. § 158(a).[3]

## II. ISSUE PRESENTED

This appeal raises a single issue, as set forth by the Trustee in his designation and statement of issues filed April 6, 1988. This issue is whether the bankruptcy court erred in determining that the Trustee did not hold the status of a bona fide purchaser of real estate because of his post-filing receipt of the commitment for title insurance.

## III. STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, the district court acts as an appellate tribunal and is governed by traditional standards of appellate review. Specifically, the Court "is constrained to accept the bankruptcy court's findings of facts unless they are clearly erroneous." *In re Excalibur Auto Corp.*, 859 F.2d 454, 457, n. 3 (7th Cir.1988); *In re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). "A finding is clearly erroneous if upon review of the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Graham v. Lennington*, 74 B.R. 963, 965 (S.D.Ind. 1987). "Generally, as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed." *Id.*

Conclusions of law made by the bankruptcy court, however, must be reviewed *de novo.* *Excalibur Auto Corp.*, 859 F.2d at 457, n. 3; *Longardner & Associates, Inc.*, 855 F.2d at 459; *In re Rice*, 90 B.R. 386, 390 (N.D.Ind.1988). And, where the challenged finding is a mixture of law and fact, the clearly erroneous standard is also inapplicable. *Graham*, 74 B.R. at 965.

In this case, the bankruptcy court's findings of fact are not being challenged, nor do they appear clearly erroneous. Instead, the Trustee is asking this Court to review a legal conclusion made by the bankruptcy court. Specifically, the Trustee challenges the holding that he was not a BFP. Whether a trustee is a BFP is a question of state law. *In re Richardson*, 17 C.B.C.2d 443, 75 B.R. 601 (Bankr.C.D.Ill.1987). Therefore, this Court must independently determine whether the bankruptcy court's determination that the Trustee was not a BFP is contrary to law, and this determination is to be made *de novo.* *United States v. Shafer Farms, Inc.*, 107 B.R. 605 (N.D. Ind.1989); *Matter of Bufkin Bros., Inc.*, 757 F.2d 1573 (5th Cir.1985).

## IV. DISCUSSION

Resolution of the issue in this case requires an analysis of specific language appearing in § 544(a) of the Bankruptcy Code. This section is called the "strong-arm clause" because it gives the trustee extensive powers to set aside preferential or fraudulent transfers, or transfers otherwise voidable under applicable state or federal law. 4 Collier On Bankruptcy, para. 544.01, 544–2 (L. King ed.1989). Section 544(a)(3), at issue here, provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law

---

**3.** Section 158(a) provides in relevant part: "The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The power conferred upon the trustee by this section is substantial. Specifically, § 544(a)(3) confers upon the trustee a status with the consequent power and capacity to act to invalidate transfers, just as if he were in actuality a bona fide purchaser of real estate from the debtor. *Id.* at 544–3. Whether the trustee qualifies as a bona fide purchaser when seeking to avoid a transfer is a question to be determined by looking at state law. *In re Flaten,* 50 B.R. 186 (Bankr.D.N.D.1985); *In re Richardson,* 17 C.B.C.2d 443, 75 B.R. 601 (Bankr.C. D.Ill.1987). After reviewing Indiana law regarding bona fide purchasers, the bankruptcy court determined the Trustee could not qualify as a BFP because information contained in the previously discussed title insurance commitment provided the Trustee with actual knowledge of third parties' interest in the real estate. (March 15, 1988, Order, paras. 5 and 6.)

█ The Trustee claims the bankruptcy court erred because his knowledge of the third parties' interest did not arise until he received the title commitment, which occurred about three years after the commencement of the bankruptcy proceedings. In support of this argument, the Trustee cites to the language of § 544(a)(3) which states in relevant part that "the trustee shall have, *as of the commencement* of the case, ... the rights and powers of ... a bona fide purchaser of real property...." (Emphasis added). Based on this language, the Trustee argues, he is a BFP because he had no notice or knowledge of the existence of competing interests as of the commencement of the case. The siblings, on the other hand, counter that documents recorded subsequent to the institu-

tion of bankruptcy proceedings are binding upon a trustee even if he is a BFP.[4]

The bankruptcy court, citing *Altman v. Circle City Glass Corp.,* 484 N.E.2d 1296 (Ind.App.1985), correctly found that under Indiana law a title insurance commitment provides actual notice of the interest of parties in real estate. *Id.* at 1299. Actual notice destroys a trustee's ability to claim BFP status. However, the bankruptcy court apparently did not consider the question of when this notice is received, and the briefs submitted to that court were of no assistance on this issue.

The Trustee's brief on appeal cites to two cases that this Court finds helpful in resolving this issue. In *In re Brown,* 37 B.R. 516 (Bankr.E.D.Mo.1984), the court held that a debtor's conveyance of real property by warranty deed was avoidable by the bankruptcy trustee because the conveyance was not recorded prior to the commencement of the Chapter 7 proceeding, and therefore no prefiling notice existed. This holding is particularly notable in that recordation in *Brown* occurred less than an hour after the bankruptcy petition was filed. Even in this circumstance, where the conveyance was recorded only minutes after the petition was filed, the court held the trustee was a BFP. *Id.* at 516. In a brief discussion of § 544(a)(3), the court stated the trustee "may avoid any transfer of real estate by a *bona fide* purchaser of that real estate that obtains such status *as of the commencement of the case.*" (Emphasis added.) *Id. Accord, In re Boyette,* 9 C.B.C.2d 349, 33 B.R. 10 (Bankr.N.D.Tex. 1983) (applying holding to Chapter 13 debtors).

Similarly, in *Gilbert v. Dixon,* 18 B.R. 579 (Bankr.S.D.Ohio 1982), the court held that a deed recorded after the filing of the bankruptcy petition is void as against the trustee. In *Gilbert,* the debtor filed his bankruptcy petition April 8, 1981, and the quitclaim deed for the conveyance sought

---

4. In addition to this argument, the siblings' brief on appeal discusses many issues not directly related to the issue as stated in Lennington's designation of issues. Specifically, the siblings expended a great deal of effort discussing a shareholder's ability to sell assets of the corpo-

ration from which the shares were issued. As Lennington declined to raise this issue on appeal, and the Court does not believe this issue is relevant to the discussion herein, it will not be addressed. This issue may be relevant, however, to the bankruptcy court upon remand.

to be avoided was recorded May 1. Noting that § 544(a)(3) grants a trustee the rights and powers of a bona fide purchaser of real property *at the time of the commencement of the case,* the court held the deed was void against the trustee, a BFP. *Id.* at 581.

While neither *Brown* or *Gilbert* contain in-depth discussions of § 544, both cases stand for the proposition that a trustee's status as a BFP cannot be defeated if the notice of the competing interests in the property is not obtained until after the filing of the bankruptcy petition. Applying these holdings to the case at bar, the record indicates the Trustee did not become aware of the competing interests until receipt of the title insurance commitment, which occurred after the filing of the bankruptcy petition. Additionally, the deeds involved in this case were not recorded until after bankruptcy proceedings commenced. Therefore, based upon the decisions in *Brown* and *Gilbert,* the Trustee's post-petition notice should not prevent him from being a BFP.

Support for this holding is not limited to these two cases. In *In re Northern Acres, Inc.,* 52 B.R. 641 (Bankr.E.D.Mich.1985), the court stated that the "as of the commencement of the case" language in § 544(a) is "qualifying language." *Id.* at 647. The court, in analyzing this language, said, "We must assume that the language 'as of the commencement of the case' was included in the statute with a purpose in mind, and we should give effect to that purpose." *Id.* The court then stated that the language "defines a particular moment in time" at which the trustee's rights are to be measured. This Court agrees with the *Northern Acres* court that the phrase "as of the commencement of the case" was intended to qualify the point in time from which a trustee's rights and powers under § 544(a) are to be determined.[5]

Furthermore, in reviewing numerous cases that have dealt with fact situations related to the facts of the case at bar, it is evident to this Court that the decisions repeatedly focus attention on the date of the commencement of the bankruptcy proceedings. *See In re Richardson,* 23 B.R. 434, 440 (Bankr.D.Utah 1982) (holding that at the commencement of the debtors' bankruptcy case sufficient information was available to place upon a prospective purchaser a duty to inquire as to the sale); *In re Trestle Valley Recreation Area, Inc.,* 45 B.R. 458 (Bankr.D.N.D.1984) (stating § 544(a) vests the trustee as of the date of the bankruptcy filing with the status of a lien creditor without knowledge, in holding an unrecorded agreement between lendor and debtor was ineffective as against the claim of the trustee); *In re Hastings,* 6 B.C.D., 4 B.R. 292 (Bankr.D.Minn.1980) (holding trustee could avoid mortgage not recorded at the time of the commencement of the case).

Moreover, in reviewing cases where courts held the trustees were not BFPs, this Court found that constructive notice was present prior to the commencement of the bankruptcy proceeding. *See, e.g., In re R.A. Beck Builders, Inc.,* 66 B.R. 666 (Bankr.W.D.Pa.1986) (holding that "for sale" sign would have given reasonably prudent person constructive notice of claim of competing purchasers prior to filing of bankruptcy petition); *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982) (holding trustee bound by constructive notice where claimant was in actual possession of the property prior to filing of bankruptcy petition).

■ This Court finds it necessary to address a related issue relevant to the Trustee's BFP status, so as to expedite proceedings on remand. This issue is whether the Debtor's knowledge of the siblings' claims to Lot 16 can be imputed to the Trustee. Two views have emerged on this matter. In *In re Hartman Paving, Inc.,* 745 F.2d

---

5. The Supreme Court adopted a similar view in *Lewis v. Mftrs. Nat. Bank of Detroit,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961) (decided pursuant to former Bankruptcy Act §· 70(c), prior to passage of Bankruptcy Code November 6, 1978). In *Lewis,* the Supreme Court stated that a "consistent theory" under the bankruptcy laws is that the rights of creditors are to be ascertained "as of the date of bankruptcy." *Id.* at 607, 81 S.Ct. at 349. The decision noted that this construction "seems to us to fit the scheme of the Act." *Id.* at 608, 81 S.Ct. at 350.

307 (4th Cir.1984), the Fourth Circuit Court of Appeals held that the actual knowledge of the debtor is imputed to him as a debtor-in-possession. However, in *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982), the Third Circuit Court of Appeals held that the debtor's actual knowledge is irrelevant. The reasoning in *Hartman Paving* has been the subject of much criticism, and was expressly rejected by the Seventh Circuit Court of Appeals in *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir.1986). In *Sandy Ridge*, the court agreed with the holding in *McCannon* that actual notice is irrelevant under § 544(a). *Sandy Ridge*, 807 F.2d at 1336.

It is unnecessary to review all the reasons why the Seventh Circuit and other courts favor the view set forth in *McCannon*. For the purposes of this Order it is sufficient to note that this preference was motivated in part because imputing the debtor's knowledge to the Trustee would render § 544(a) virtually useless. As stated in *In re Harter, Inc.*, 31 B.R. 1015, 1020 (Bankr.D.Kan.1983), "It would be a rare case in which [the] debtor would not have knowledge of liens that could be the subject of the trustee's lien avoidance powers." *See also In re Lewis*, 19 B.R. 548 (Bankr.D.Idaho 1982); *In re Richardson*, 23 B.R. 434 (Bankr.D.Utah 1982); *In re Bandell Investments, Ltd.*, 80 B.R. 210 (Bankr.D.Colo.1987). Because the debtor's actual knowledge is irrelevant to the case at bar, this inquiry need not be explored further.

A different result has been reached as to the issue of constructive notice. The Seventh Circuit in *Sandy Ridge*, again citing to *McCannon*, held that the state law of constructive notice remains applicable in the context of § 544(a)(3). *Sandy Ridge*, 807 F.2d at 1336. As noted in *McCannon*, the words "without regard to any knowledge" in § 544 were not meant by Congress to nullify all state law protections of holders of equitable interests. *Id.* at 16. Rather, the purpose is to place the trustee in a position of a hypothetical purchaser at the time of the filing of bankruptcy. *Bandell Investments*, 80 B.R. at 212. Therefore, on remand the bankruptcy court is to determine whether, according to state law, the Trustee had constructive notice of the siblings' claims to Lot 16.[6] The deed to Lot 16 was not recorded until December 10, 1987. For reasons previously discussed, this does not give the Trustee constructive notice of the siblings' claims because recordation occurred after the commencement of the bankruptcy proceedings.

## V. CONCLUSION

The foregoing discussion leads this Court to the conclusion that the use of the words "as of the commencement of the case" was intended to establish a definite point in time from which the trustee's rights and powers are to be determined. Accordingly, any notice the trustee received after commencement of the bankruptcy proceedings is irrelevant to this issue. That the bankruptcy court apparently did not consider this issue is understandable in view of the number of other issues considered and the lack of briefing on the matter. Nevertheless, applying the *de novo* standard of review this Court must find that it was error to hold that the Trustee is prevented from qualifying as a BFP because of knowledge he acquired of the title insurance commitment after the bankruptcy proceedings commenced.

The bankruptcy court may find some other basis, not apparent from the record, for holding the Trustee is not BFP. However, the Order below holds only that the Trustee is not a BFP because of his post-filing receipt of the title insurance commitment. This holding is contrary to law. Therefore, this cause is REVERSED AND REMANDED to the bankruptcy court for further proceedings consistent with this Order.

IT IS SO ORDERED.

---

**6.** The record is incomplete on this issue and therefore the Court declines to make this finding on its own. According to the bankruptcy court's Order, Lot 16 housed a building leased to a photocopying business. On this fact alone, the Court cannot determine whether state law would impute constructive notice to the Trustee.