J-S31033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THE LAMAR COMPANIES<br><br>Appellee<br><br>v.<br><br>BRAD ARIC, L.L.C., PRIME DIVERSIFIED SERVICES, L.L.C. AND GLORY DAYS INVESTMENTS, L.L.C.<br><br>Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>No. 1694 MDA 2014 |

Appeal from the Order Entered on September 8, 2014
In the Court of Common Pleas of Berks County
Civil Division at No.: 11-22196

BEFORE:  BENDER, P.J.E., ALLEN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 07, 2015**

Prime Diversified Services, L.L.C., and Glory Days Investments, L.L.C. (collectively, "PDS"),[1] appeal the trial court's September 8, 2014 order granting summary judgment to Appellee Lamar Companies' ("Lamar") in its claim for specific performance of a lease agreement ("the Lease") granting

---

[1]    Although these parties are denominated separately, and in certain particulars behaved as distinct parties in the trial court, they have the same attorney and have acted in unison together before the trial court and this Court in most particulars.  As well, as the trial court relates and neither appellant disputes, Prime Diversified and Glory Days "share a common owner and/or common corporate officers and/or corporate directors including a common corporate 'President[.']"  **See** Trial Court Opinion, 11/26/2014, at 4 ¶ 8.  Insofar as they appear in relevant part to have acted in concert in connection with the events that precipitated this litigation and brief their appeal as one, we treat them as one entity.

them the option to purchase a perpetual easement over a property upon which they maintained a billboard ("the Property"). The trial court determined that, because PDS knew or should have known that Lamar was a tenant in possession of the Property when PDS purchased all of the assets of Brad Aric, L.L.C. ("Brad Aric"), including the Property, they were not *bona-fide* purchasers for value with legal priority over Lamar. Thus, Lamar's option under the Lease to purchase a perpetual easement upon the Property from Brad Aric survived PDS's acquisitions of Brad Aric's assets, binding PDS and entitling Lamar to the easement it sought as a matter of law. We affirm.

The trial court presented the following facts as undisputed:

1. In March 2008 [Brad Aric] entered into a lease with [Lamar,] which granted Lamar's right to access, maintain and update an already existing outdoor advertising billboard ("the [S]ign") on [PDS's] property for a period of ten (10) years. . . .

2. The [Sign] has an advertising sign surface of approximately two hundred forty[-]seven and a half (247.5) square feet in size in its current configuration. Included on the Sign is an advertising logo with Lamar's name on it.

3. [Brad Aric] formerly did business at 1402 N. 9th Street, Reading, PA 19604 prior to the sale of all assets of Brad Aric to [PDS] on January 19, 2011. [Brad Aric] has no current business address, as [Brad Aric] has not done any business since the transfer of all its assets.

* * * *

5. Mariano Sfameni and Peter Sfameni Jr[.] are the sole surviving members of the Brad Aric [*sic*]. Both were present at various times at the Property when the representatives of [PDS] visited the Property. [PDS], through their above-referenced representatives[,] were informed of the Lease . . . and they were

- 2 -

shown the billboard sign which Lamar has on the Property during the course of their visits/inspections. Additionally, [PDS's representative,] Chris Mahmood[,] had discussions with Peter Sfameni Jr. in which he stated that the lease payments from [Lamar] were inadequate and [PDS] were going to force Lamar to pay more for the [L]ease.

6. Brad Aric believes that Chris Mahmood, Edna Mahmood and Zia Mahmood visited, inspected, and/or examined the Property on behalf of [PDS] prior to January [1]9, 2011.[2]

7. [PDS] acquired ownership of the Property on January 19, 2011 from Brad Aric.

* * * *

9. No [w]ritten [n]otice of the pending sale, as required by the Lease, was provided [to Lamar].

10. [PDS] admits that a sign was present on the [P]roperty at the time of the final closing.

11. [PDS] did not contact [Lamar] concerning either the Sign or the Property prior to January 19, 2011.

12. The first written notification Lamar receive[d] about the sale of the property [was] on March 2011 [*sic*] when their rent check [was] returned.

13. [PDS] did not notify [Lamar] of the existence of [PDS's] agreement to purchase the [P]roperty prior to March 30, 2011.

14. [PDS] did not notify [Lamar] of the final closing and settlement on the conveyance of the [P]roperty to [PDS] prior to March 30, 2011.

15. Subsequent to March 30, 2011[,] and prior to the commencement of this [l]awsuit, [PDS] notified [Lamar] that

---

[2] The facts in paragraphs 5, 6, and elsewhere, which are cited as "undisputed" by the trial court, are derived from discovery responses provided by Brad Aric. Brad Aric declined to participate in this appeal. PDS does dispute certain averments that the trial court erroneously characterized as undisputed.

[PDS] considered the Lease to be entirely invalid and/or unenforceable against [PDS].

16. On April 26, 2011 [PDS] received [Lamar's] April 25, 2011 correspondence notifying [PDS] of [Lamar's] intention to exercise its option to purchase a perpetual easement pursuant to the terms of the Lease.

17. The above notification to exercise their right to the purchase option was within 30 days [of the notice of sale] as required by the Lease.

18. [PDS] received [Lamar's] May 20, 2011 correspondence notifying [PDS] that settlement and closing on the transfer of the perpetual easement which is the subject of this lawsuit was scheduled to occur on May 25, 2011[,] and further notifying [PDS] of the location where the settlement and closing would occur.

19. [Lamar] tendered a check for the amount of [the] 2011 annual rental payment which was due and [owing] under the Lease to [PDS] prior to commencement of this [l]awsuit.

20. [PDS] made an independent and voluntary decision not to cash or deposit the check tendered by [Lamar] . . . .

21. [Lamar] timely tendered a check for the 2012 annual rental payment which may have been due and owing under the Lease to [PDS] subsequent to the commencement of this [l]awsuit.

22. [PDS] made an independent and voluntary decision not to cash or deposit the check . . . .

23. [Lamar] timely tendered a check for the 2013 annual rental payment . . . to [PDS] . . . .

24. [PDS] made an independent and voluntary decision not to cash or deposit the check . . . .

＊ ＊ ＊ ＊

28. [PDS] did not notify [Lamar] of [PDS's] acquisition of Brad Aric and/or any of Brad Aric's assets prior to March 30, 2011.

29. [PDS] admits that a sign was present on the Property[] prior to the execution of any agreement of sale for the [P]roperty and at the time of the final closing.

* * * *

31. [PDS] refused and is continuing to refuse to convey a perpetual easement burdening the Property of the type and nature sought in [Lamar's] [c]omplaint pursuant to the terms of the Lease notwithstanding [Lamar's] written demand that [PDS convey such an easement.

Trial Court Opinion ("T.C.O."), 11/26/2014, at 3-7 (unnumbered) (record citations omitted).

Based on these events, on September 28, 2011, Lamar filed the complaint that commenced the instant litigation. Therein, Lamar sought, at count I, declaratory judgment to establish that all of Lamar's rights under the Lease survived the transfer of the Property to PDS; at count II, specific performance by compelling PDS to convey the easement sought by Lamar pursuant to the Lease; at count III, in the alternative, rescission of the transfer of the Property from Brad Aric to PDS; and, at counts IV and V, breach of contract against all parties. Thereafter, the parties commenced and completed discovery.

On March 13, 2014, Lamar filed the motion for partial summary judgment at issue in this case.[3] Therein, Lamar sought summary judgment as to counts I, II, III, and IV, and an award of legal costs and fees, as

---

3    In fact, Lamar filed its first motion for partial summary judgment on November 27, 2013. However, after a number of other procedural events, including reassignment of the case to another judge and a change of counsel for PDS, events that do not bear materially on this appeal, Lamar's motion ultimately was resubmitted on March 13, 2014, and it is the trial court's ruling upon that motion that concerns us presently.

provided for under the Lease. Based upon these findings of allegedly undisputed fact, the trial court entered summary judgment in favor of Lamar, directing, *inter alia*, PDS to provide Lamar with a perpetual easement, as provided for by the Lease.

PDS filed a timely notice of appeal of the trial court's order.[4] The trial court directed PDS to file a concise statement of the errors complained of on appeal, and PDS timely complied. The matter is now ripe for our review.

PDS raises the following issues for our review:

1. Did the trial court err in granting [Lamar's] Motion for Partial Summary Judgment where there exists a genuine issue of material fact as to whether [Brad Aric], the actual party to the lease agreement with [Lamar,] properly notified [Lamar] of the sale of the [P]roperty and [Lamar] chose not to exercise the option for a perpetual easement?

2. Did the trial court err in granting [Lamar's] Motion for Partial Summary Judgment where there exists a genuine issue of material fact as to whether [Lamar was] a tenant in possession of the [P]roperty at the time of [PDS's] purchase of the [P]roperty?

_____

[4] This Court has jurisdiction over immediate appeals of a trial court order that "grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction," with exceptions that are not relevant to the instant matter. *See* Pa.R.A.P. 311(a)(4). Our Supreme Court has held that a trial court order directing (or denying) specific performance of a real estate transaction is an order granting (or denying) injunctive relief that is subject to immediate appeal as of right under Rule 311. *See Wynnewood Dev., Inc., v. Bank & Trust Co. of Old York Rd.*, 711 A.2d 1003, 1005 (Pa. 1998) (citing *Petry v. Tanglwood Lakes, Inc.*, 522 A.2d 1053, 1055 n.3 (Pa. 1997)). Thus, PDS has the right to appeal the trial court's order granting relief in the form of specific performance in the instant matter.

3. Did the trial court err in granting [Lamar's] Motion for Partial Summary Judgment where there exists a genuine issue of material fact as to whether [PDS was] aware of the existence of a written lease agreement between [Lamar] and [Brad Aric] in the matter prior to [PDS's] purchase of the [P]roperty?

4. Did the trial court err in granting [Lamar's] Motion for Partial Summary Judgment and ordering [PDS] to pay [Lamar's] reasonable attorney's fees, cost of suit and all other expenses reasonably incurred by [Lamar] pursuant to the terms of the [Lease] where [PDS is] not a party to the [Lease]?

Brief for PDS at 7.

PDS's first three issues directly implicate the trial court's order granting summary judgment to Lamar. "Our scope of review of a trial court's order granting or denying summary judgment is plenary . . . ." *Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 649 (Pa. Super. 2010). We may not disturb the order of the trial court unless it is established that the court committed an error of law or abused its discretion. *Coleman v. Wyeth Pharma., Inc.*, 6 A.3d 502 (Pa. Super. 2010).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

- 7 -

*Id.* at 509 (quoting ***ADP, Inc. v. Morrow Motors Inc.***, 969 A.2d 1244, 1246 (Pa. Super. 2009)).  Summary judgment should be granted only when the "party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." ***Ertel v. Patriot News Co.***, 674 A.2d 1038, 1041-42 (Pa. 1996).

Lamar argues that PDS has waived the first issue it raises before this Court.  Specifically, Lamar contends that PDS did not assert that a question of material fact existed regarding whether Brad Aric adequately notified Lamar of his desire to sell the property to PDS in its opposition to Lamar's motion for summary judgment.  Brief for Lamar at 13-15.

It is axiomatic that issues not raised in the trial court in the first instance are waived for purposes of appeal.  ***See*** Pa.R.A.P. 302(a); ***Lincoln Phila. Realty Assocs. I v. Bd. of Revision of Taxes of City & Cty. of Phila.***, 758 A.2d 1178, 1186 (Pa. 2000).  "By requiring that an issue be considered waived if raised for the first time on appeal, we ensure that the trial court . . . that initially rules on such matters has had an opportunity to consider the issue." ***Lincoln Phila. Realty***, 758 A.2d at 1186.  In ***Walsh v. Borczon***, 881 A.2d 1 (Pa. Super. 2005), we held that defenses not raised in responsive briefs to motions for summary judgment are waived for purposes of appeal.  ***See id.*** at 4-6 (citing ***Devine v. Hutt***, 863 A.2d 1160 (Pa. Super. 2004); ***Harber v. Phila. Ctr. City Office Ltd. v. LPCI Ltd. P'ship***, 764 A.2d 1100 (Pa. Super. 2000)).  Furthermore, we held in

*Harber*, in the context of a motion for summary judgment, that "[a] decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not." *Harber*, 764 A.2d at 1105. Consequently, before this Court, PDS may challenge only the trial court's rejection of defenses expressly raised in their motion for summary judgment.[5]

For the foregoing reasons, we must measure PDS's arguments on appeal against its pleadings as well as the averments and evidentiary showing PDS submitted in opposition to Lamar's motion for summary judgment to determine whether any of PDS's issues are waived. In PDS's response to Lamar's motion, it raised only one overarching challenge to Lamar's motion. Therein, it disputed Lamar's contention that, because Lamar clearly was a tenant in possession of at least a portion of the Property, PDS was on constructive notice of Lamar's potential claim to the Property. PDS argues that a genuine question of material fact as to PDS's

_____

[5] In its answer to Lamar's complaint, PDS made a generalized denial with regard to whether Brad Aric provided Lamar with due notice of its intent to sell the Property. **Compare** Lamar's Complaint at ¶ 19 **with** PDS's Answer at ¶ 19. However, this generalized denial, expressly attributed to a lack of information to respond, cannot suffice to preserve the issue in light of the fact that PDS stood silently on this point during summary judgment proceedings, despite having the benefits of full discovery, and offered no information sufficient to substantiate any such averment. **See Coleman**, 6 A.3d at 509 ("Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.").

constructive notice and obligation to inquire thus precluded the entry of summary judgment. Consequently, there is no question that PDS's second issue, which raises this issue directly, was preserved for review.

Conspicuously absent from PDS's brief in opposition, however, is any assertion regarding whether Brad Aric gave or did not give notice to Lamar of its intent to sell, in writing or orally.[6] Similarly, although PDS challenged Lamar's attempt to impute notice of Lamar's possessory interest to PDS, PDS did not specifically aver that it was unaware that the Lease existed before it closed its acquisition of the Property. Thus, PDS's first issue is waived.

PDS's fourth issue, which challenges the trial court's award of attorney's fees, also is waived. Lamar's claim for reimbursement was based upon the facially unambiguous provision in the Lease providing that such fees would be awarded under circumstances such as those presented in this case. *See* Lease at 2 ¶ 10 ("LESSOR agrees to indemnify LESSEE from any and all damages, liability, costs and expenses, including attorney's fees,

---

[6] PDS concedes that no written notice was provided, but contends before this Court that a dispute exists as to whether Brad Aric provided Lamar with oral notice and whether such notice would suffice to start the clock on Lamar's easement option, despite the Lease's express requirement of written notice. *See* Brief for PDS at 13 (citing Brad Aric's Answer at ¶¶ 52-55, wherein Brad Aric asserted that a representative of Brad Aric informed Lamar's representative telephonically of Brad Aric's intent to sell and Lamar's representative indicated that Lamar was not interested in exercising its option, whereafter Brad Aric proceeded with the sale).

- 10 -

resulting from any inaccuracy in or nonfulfillment of any representation, warranty or obligation of LESSOR herein."). While PDS challenged the award of summary judgment in the first instance, and, had it prevailed, would not have faced a viable claim for fees unless and until Lamar prevailed at trial, it nonetheless was foreseeable that the trial court could grant summary judgment to Lamar. Accordingly, in case the trial court were to grant summary judgment to Lamar, as it did, the onus was on PDS to provide its basis for opposing attorney's fees at the first possible opportunity—*i.e.*, in its opposition to Lamar's motion. Only by doing so could PDS have ensured that the trial court considered in the first instance PDS's opposition to such an award. Accordingly, this issue, too, is waived.

As noted, *supra*, the substance PDS's second issue lay at the heart of its opposition to Lamar's motion for summary judgment. Furthermore aspects of PDS's third issue are intertwined with its second issue to the extent that its awareness of the Lease arguably should be imputed due to Lamar's allegedly conspicuous tenancy in possession of the property.[7] Thus,

---

[7] PDS obviously shares our view, insofar as PDS presents just one argument section under its headers for both issues. **See** Brief for PDS at 15. This is a technical violation of Pa.R.A.P. 2119(a), which provides that "[t]he argument shall be divided into as many parts as there are questions to be argued." However, for the reasons set forth above, we find that this violation is *de minimis* relative to the substance of those interrelated issues. Accordingly, there is no reason to sanction the violation except to note for counsel's benefit that he should more scrupulously adhere to our rules of procedure in future submissions to this Court.

we will find the third issue preserved to the extent that it rests upon that premise, despite the fact that PDS did not raise it as a distinct issue in its brief in opposition to summary judgment.

In PDS's preserved argument, it contends that a genuine issue of material fact exists concerning its awareness of Lamar's tenancy upon, and consequent possessory interest in, the Property. Pennsylvania law provides as follows:

> Under Pennsylvania law, at the time of signing an unconditional agreement for the sale of land, the buyer acquires an equitable interest in the land. **Byrne v. Kanig**, 332 A.2d 472 (Pa. Super. 1975). This rule is consistent with the common law rule regarding unrecorded deeds and agreements of sale whereby a buyer acquires an equitable interest in the land. At common law, the first buyer's deed was superior to subsequent deeds to the property conveyed by the same grantor, regardless of whether the first deed was without consideration and the subsequent deed was to a *bona*[-]*fide*[*s*] purchaser without notice. The Pennsylvania recording statute, however, protects subsequent purchasers by giving a subsequent *bona*[-]*fide*[*s*] purchaser for value without notice of a prior transaction priority over the equitable estate of the first owner. **Lund v. Heinrich**, 189 A.2d 581 (Pa. 1963). However, in order to qualify as a *bona*[-]*fide*[*s*] purchaser, the subsequent buyer must be without notice of the prior equitable interests of others. **Overly v. Hixson**, 82 A.2d 573 (Pa. Super. 1951). If the subsequent purchaser has notice of the first agreement of sale or deed, he has no protection as a *bona*[-]*fide*[*s*] purchaser and his title is subject to the interest vested in the first purchaser. Either actual or constructive notice is sufficient to prevent the subsequent purchaser from acquiring the status of a *bona*[-]*fide*[*s*] purchaser. **Id.** Because constructive notice is not limited to instruments of record, a subsequent purchaser may be bound by constructive notice of a prior unrecorded agreement. **Id.**; **Smith v. Miller**, 145 A. 901 (Pa. 1929). This is true because the subsequent purchaser could have learned of facts that may affect his title by inquiry of persons in possession or

others who the purchaser reasonably believes know such facts. **Lund**, *supra* ; **Sidle v. Kaufman**, 29 A.2d 77 (Pa. 1943).

**Long John Silver's, Inc. v. Fiore**, 386 A.2d 569, 572-73 (Pa. Super. 1978).

PDS takes aim at the trial court's ruling principally by seeking to distinguish the two cases upon which the trial court relied, **Fiore**, *supra*, and **McCannon v. Marston**, 679 F.2d 13 (3d Cir. 1982), focusing primarily upon the latter case.[8] **See** Brief for PDS at 16-18. In **McCannon**, the appellant entered into an agreement with a partnership doing business as The Drake Hotel to purchase a condominium apartment and a percentage of the hotel's common areas. 679 F.2d at 14. The appellant paid a deposit and took up residence in the apartment, where she continued to reside during the litigation. However, the sale never reached settlement and was never recorded. **Id.**

Later, Drake filed a Chapter 11 bankruptcy petition. The appellant subsequently filed a complaint seeking relief from the statutory bankruptcy stay in the form of specific performance of the pending purchase agreement. The bankruptcy court, interpreting a federal statute that appeared to vitiate Pennsylvania law denying *bona-fide* purchaser status to subsequent parties

---

[8] The decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, do not bind Pennsylvania state courts. However, they may have persuasive authority. **See, e.g., Martin v. Hale Prods., Inc.**, 699 A.2d 1283, 1287 (Pa. Super. 1997).

acquiring an interest in the property when the subsequent party had constructive notice of the first party's interest, denied relief. The district court affirmed. **Id**.

The court of appeals began by reviewing the above-mentioned principles of Pennsylvania state law, concluding that the appellant, as a purchaser under a written agreement of sale for the apartment, was the equitable owner of that apartment. **Id.** at 15. The court further noted that a subsequent purchaser who has notice of the prior purchaser's possession of the property is obliged "to inquire into the possessor's claimed interest, equitable or legal, in that property." **Id.** at 16 (citing **Kinch v. Fluke**, 166 A. 905 (Pa. 1933); **Fiore**, *supra*). The court of appeals held that the facially contrary provision of federal bankruptcy law was not intended "to nullify all state law protections of holders of equitable interests," or "obliterate the rights of equitable owners in possession of real property." **Id.** at 16, 17. Thus, the court held as follows:

> Were the Pennsylvania Supreme Court asked to consider whether a subsequent purchaser of a condominium building had a duty to make inquiry as to the rights of persons in possession of apartments in that building, it would hold that such possession provides constructive notice, as a matter of law, no different than in the case of possession of a single[-]family home.

**Id.** at 17.

PDS argues that **McCannon** is distinguishable because in that case the appellant actually resided in the entire apartment, whereas, in this case, Lamar "simply ha[d] a sign on one portion of the [P]roperty." Brief for PDS

at 17. Given this difference, PDS maintains, "it is clear that [Lamar] is not a tenant in possession and therefore [PDS was a *bona-fide*] purchaser[] of the [P]roperty." ***Id.***

The trial court found that PDS had constructive notice of Lamar's tenancy in possession for two reasons. However, the first reason is sufficient to support the trial court's ruling, so we focus upon that finding. The trial court observed that "the sign at issue has an advertising sign surface of approximately two hundred forty[-]seven and a half (247.5) square feet in size . . . . Included on the [s]ign is an advertising logo displaying [Lamar's] name." T.C.O. at 7. The trial court underscored PDS's admission that "the sign, displaying [Lamar's] name[,] was present both before the sale of the [P]roperty and at closing." ***Id.*** at 8.

PDS has not disputed either of these conclusions. Instead, it relies upon the proposition that, because Lamar's sign occupied only a portion of the Property, its presence did not constitute notice to PDS of Lamar's interest and therefore could not furnish a basis to deny PDS's status as a *bona-fide* purchaser whose priority interest in the Property was protected by that status.

PDS's attempt to distinguish ***McCannon*** upon that basis necessarily fails because it is not distinguishable in the particular ventured by PDS. The appellant's prior interest in the condominium in that case might have pertained to the whole apartment in question, but that apartment was just one among a number of such apartments and common areas. Insofar as the

- 15 -

property subject to the bankruptcy evidently was the entire building, not just that apartment, the case is actually quite analogous to this case in which Lamar possessed just a portion of the Property insofar as the **McCannon** appellant's apartment was only a fraction of the Drake property's entirety.

Notably, PDS does not suggest uncertainty as to whether the Sign, which it does not deny being aware of at all relevant times, lay within the Property or outside its boundaries. PDS also does not contend that the "Lamar" logo attached to the Sign was insufficient to establish Lamar's potential interest in the Property. Indeed, it is not clear that such a claim would have traction in any event; the mere presence of such a large appurtenance to the Property, even without an identifying sign, presumably would put PDS on inquiry notice, just as the **McCannon** appellant's possessory interest arose from her occupancy of the apartment, not from the debtor's knowledge of the appellant's identity. Furthermore, PDS does not cite any legal authority requiring as a matter of law, or even suggesting, that the prior possessor must dominate the entire property in question, and it is unclear upon what basis such a distinction would harmonize with the general imposition of an obligation upon a subsequent purchaser to investigate any apparent possessory interest by a third party to the purchase agreement.

For the foregoing reasons, we conclude that the trial court did not err in finding that no genuine issue of material fact existed concerning PDS's constructive knowledge of Lamar's possessory interest in the Property.

Thus, the trial court did not err in concluding as a matter of law that PDS was not a *bona-fide* purchaser of the Property, and accordingly could not assert a priority interest over Lamar's interest in the Property.  This determination resolving the only issue preserved for our review, we find that PDS is not entitled to relief from the trial court's entry of summary judgment in favor of Lamar.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015