In the Matter of Allen Dale RICE and Doris Jane Rice, and Michael Allen Rice and Beverly Sue Rice, Debtors.

Allen Dale RICE and Doris Jane Rice, and Michael Allen Rice and Beverly Sue Rice, Appellants,

v.

INDIANA LAWRENCE BANK, Appellee.

Bankruptcy Nos. 86–31480, 86–31553. Civ. No. S 88–239.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 25, 1988.

David Peebles, Daniel J. Skekloff, Fort Wayne, Ind., for appellants.

Stephen H. Downs, Wabash, Ind., for appellee.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The matter now before the court is the consolidated appeal of the above debtors, brought pursuant to Rule 8001 *et seq.* of the Federal Rules of Bankruptcy Procedure. The basis for this court's jurisdiction is found at 28 U.S.C. § 1334 and 158. The debtors appeal from a bankruptcy order entered on March 18, 1988, which addressed their request for summary ruling on an Emergency Motion for Relief from an Adequate Protection Order.

### I.

This appeal involves a farm reorganization under Chapter 11 of the United States Bankruptcy Code. The senior Rice's, Allen and Doris, who have a 75% interest in the subject farming operation, filed their petition in bankruptcy on November 5, 1986. Their son Michael and his wife Beverly, who have the remaining 25% interest in the farming operation, filed their bankruptcy petition on October 24, 1986.

On November 21, 1986, the bankruptcy court entered an Order for Personal Adequate Protection, whereby the parties stipulated that the debtors Allen and Doris would maintain their hog herd at its existing size, ages, and weights aside from normal fluctuations, and that the bank would have a security interest in the entire herd. It was further agreed and ordered that 25% of all the proceeds from any sale of the hogs would be paid immediately to the bank upon receipt. Michael and Beverly Rice entered into a similar arrangement relative to their interest in the operation on December 17, 1986. It is undisputed that the debtors have honored the agreement in terms of maintaining the herd in quality and number.

On March 26, 1987, Allen and Doris Rice filed a Motion to Reduce Adequate Protec-

tion Payments, indicating in that motion that between November 21, 1986, and March 26, 1987, they had paid in excess of $34,296.38 in compliance with the adequate protection order. The debtors further pointed out that by their schedules, the hogs in question were valued at $70,000.00. The motion alleged that their ability to continue operations was being hampered by the "obviously accelerated payment of principal" of their debt to Indiana Lawrence Bank. On July 17, 1987, the debtors requested a valuation hearing.

On July 28, 1987, the bankruptcy court issued an order which temporarily reduced the percentage of the gross proceeds owed to the bank, from 25% to 10% for the months of August, September, and October, but the order simultaneously granted a $21,600 lien on the debtors' bean crop, payable within 30 days of its harvest, which in amount cancelled out the advantage of the percentage reduction. On August 4, 1987, the debtors moved to alter or amend this order, contending that the effect of the order was to improve the bank's position, and asking that the order be modified to eliminate the lien on the bean crop.

On November 12, 1987, the debtors filed an Emergency Motion for Modification of the order of July 28, 1987. The debtors' emergency motion stated that at the filing of their petition, the value of their interest in the livestock herd was by their calculations about $112,000.00 and by the bank's figures, $127,000.00. The movants further pointed out that the herd continued to be maintained as agreed, and that as of the filing of the emergency motion, they had paid the bank $93,384.00. On the basis of attachments, the debtors attempted to show that hog prices had dropped sharply, and that the burden of the July order would force them to liquidate and prevent them from reorganizing for the benefit of other creditors. The debtors requested relief from any further payments to the Indiana Lawrence Bank, arguing that the current total was already beyond the meaning of adequate protection. On January 8, 1988, the bankruptcy court took the matter under advisement, noting that the time for filing briefs had passed.

On December 8, 1987, the debtors Allen and Doris filed their Plan of Reorganization and Disclosure Statement. These documents indicated that the debtors' operation involved 1805 hogs, including 184 breeders, and that the herd has been maintained at that number. It was further stated that Indiana Lawrence Bank's claim is approximately $265,000.00. The documents claimed that in a typical year the debtors would expect to market 3300 hogs weighing approximately 230 pounds each, and selling at approximately $93.15 each for a total of $307,395.00. From this, a total of about $238,656.00 was subtracted as costs for the hogs themselves, and another $31,000.00 was counted out for other costs such as fuel, repairs, and replacement, for a profit of $37,739.00. It was noted however, that at an average market price of $.45/lb., the projected annual profit would be $71,894.00. It was also noted that actual receipts would be higher, due to the fact that corn is part of their crop operation, and it is not a cash outlay of the hog operation. Finally, the plan provided for payment to Indiana Lawrence Bank with interest from and after the date of Confirmation to the extent it is secured, less the adequate protection payments paid during administration of the case, at the rate of $2,000.00 per month until paid in full, with a security interest in the debtors' chattel continuing until payment, and an unsecured portion of the claim to be paid on a pro-rata basis in a lump sum of $10,-000 per year for seven years.

On February 11, 1988, Indiana Lawrence Bank filed objections to the debtors' Plan and Disclosure statement, complaining that a detailed listing of the Rice's 1984–1986 income and expenses should be required. Additionally, the bank objected that the priority or administrative expense to be paid had not been identified, nor were the debtors' miscellaneous expenses of $21,-469.00 properly detailed. The bank further contended that information was insufficient to permit the creditors to determine the extent of their security, that information was insufficient as to the value and prospect of recovery on certain of the debtors'

claims and future interests, and that the plan provided no liquidation analysis, nor explanation of the absolute priority rule. Finally the bank argued that the debtors gave no explanation for the expected source, nor for the calculation of $10,000/year to be paid to unsecured creditors, and that the explanation of future operations was vague and insufficient. According to the bank the plan should be viewed as unconfirmable. By their calculations, with a 1987 gross income of about $196,000.00 and gross expenses of about $163,000.00, only $33,000.00 would be left for debt service. The bank reasoned from these figures, that if the farmers were to pay unsecured creditors $10,000.00 per year and Indiana Lawrence Bank $24,000.00 as proposed, they would be experiencing a short fall of $1,000.00 before ever paying other secured creditors. The debtors' plan and disclosure statement were scheduled for hearing.

On February 19, 1988, the debtors filed a Request for Summary Ruling on their emergency motion indicating that the bank had received "substantially more than $100,000.00" as adequate protection in the consolidated cases, an amount which the debtors argued had gone far beyond a consideration of depreciation or protection of collateral, especially in light of an "upturn in real estate values in Indiana." Citing *In re Timbers of Inwood Forest*, — U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the debtors contended that adequate protection payments should be ordered to cease. A consolidated valuation hearing was held on March 3, 1988 and the matter of valuation was taken under advisement on April 11, 1988.

At hearings held on December 2, 1987, March 3, 1988, and May 3, 1988, the bankruptcy court heard various versions of the amounts already paid to the bank, amounts still owed to the bank, and the values of the debtors' property and the bank's interest in that property. The order of March 18, 1988, did not address any of these matters, and valuation appears from this record to remain under advisement.

In dealing with the proper implications of the holding in *Timbers*, the bankruptcy court recognized in its March order that pursuant to *Timbers*, creditors are not entitled to the time value of collateral. The court focused its discussion on the voluntary nature of the original stipulated agreement, concluding that the *Timbers* holding would not preclude the bankruptcy court from "enforcing adequate protection payments which it might not have ordered had *Timbers* been decided at the time of the order."

Although the court ordered a reduction of the percentage that the debtors were required to pay, it appeared that the court based its decision on the voluntary nature of the original stipulations, rather than on a consideration of the creditor's interest in the debtor's property as defined by *Timbers*. By reducing the percentage payment from 25% to 18% of the debtors' gross receipts, the court calculated that the debtors would thereby retain approximately 10% of their net profits instead of the 9% they were receiving in October of 1986 or the 3% that they were receiving as a result of recent changes in market prices and production costs.

The debtors filed their notice of appeal on March 28, 1988, and their statement of issues and designation of record on April 6, 1988. The parties have filed briefs addressing the relevant issues, and supplemental material subsequent to a hearing before this court on June 10, 1988. On June 7, 1988, the defendants filed a motion to strike from the record on appeal, all matters pertaining to the bankruptcy court's July 28, 1987 order, as well as any attachments pertaining to current market prices of hogs. Having reviewed these materials, the court finds them relevant to this inquiry, to the extent that they have a bearing on proper application of the *Timbers* decision, and on the adequate protection of the bank's interest in the debtors' farming operations. The issues in this case having been briefed, the matter is ripe for a decision.

## II.

This court's review of an order of the bankruptcy court is governed by Federal Rule of Bankruptcy 8013, which provides, in relevant part, that findings of fact shall not be set aside unless they are found to be clearly erroneous. In this determination, due regard is to be given to the bankruptcy judge's position of advantage in judging the credibility of the witnesses. Fed.R.Bankr. 8013; *In re First Wisconsin National Bank of Milwaukee v. The Federal Land Bank of St. Paul,* 849 F.2d 284 (7th Cir.1988). Although with respect to findings of fact, the district court will defer to the bankruptcy court, questions of law will require *de novo* review. *In re Park Terrace Townhouses,* 852 F.2d 1019 (7th Cir.1988); *In the Matter of Hilligoss,* 849 F.2d 280 (7th Cir.1988). Stated otherwise, on review, this court must adopt the bankruptcy court's findings of fact unless they are clearly erroneous, but the clearly erroneous rule does not apply to a review of the bankruptcy court's conclusions of law. *In re Ebbler Furniture and Appliances, Inc.,* 804 F.2d 87, 89 (7th Cir.1986).

The Bankruptcy Code provides pursuant to § 362(a) that, among other things, actions taken to realize the value of collateral given by the debtor will be automatically stayed when a petition in bankruptcy is filed. *United Sav. Ass'n v. Timbers of Inwood Forest,* — U.S. —, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); 11 U.S.C. § 362(a). The court will, however, grant relief from the stay when the interest of a creditor requires "adequate protection." *Timbers,* — U.S. —, 108 S.Ct. 626, 629, 98 L.Ed.2d 740 (1988); 11 U.S.C. § 362(d)(1).

Title 11 U.S.C. § 361 provides that adequate protection may be provided by:

"(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay ... results in a decrease in the value of such entity's interest in such property; or

(2) providing to such entity an additional or replacement lien to the extent that such stay ... results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

11 U.S.C. § 361; *Timbers,* 108 S.Ct. at 629.

Prior to *Timbers* the Courts of Appeals were split on the meaning of an entity's "interest in such property", with some court's interpreting the phrase to allow the creditors the benefit of their bargain by awarding monthly payments for the use value of the loan collateral which the stay in bankruptcy prevented. Although it does not appear that the Court of Appeals for the Seventh Circuit had specifically addressed the issue, the courts of this jurisdiction typically have relied on *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984) and *Grundy National Bank v. Tandem Mining Corporation,* 754 F.2d 1436 (4th Cir.1985), both specifically overruled by *Timbers,* to award compensation for delay. *See, e.g., Matter of Lipply,* 56 B.R. 524 (Bkrtcy.N.D.Ind.1986). The bankruptcy judge correctly concluded in his March 18, 1988, order that at the time of the adequate protection orders here in dispute, the bankruptcy court was well within the law in its order of adequate protection payments. The proper application of *Timbers* to subsequent activity is less clear.

Since *Timbers* it is firmly established that "interest in property" does not include a creditor's right to immediate foreclosure, and that an undersecured creditor is not entitled to interest on its collateral as compensation for delay caused by a stay in bankruptcy. Although this court agrees that *Timbers* does not require retroactive application so as to nullify an earlier adequate protection order, it would appear appropriate as a matter of law to consider its application prospectively in the context of a debtor's motion to reconsider in light of *Timbers. See, In re Sherwood Square Associates,* 87 B.R. 388 (Bkrtcy.D.Md. 1988). *See also, In re Anderson,* 88 B.R. 877 (Bkrtcy.N.D.Ind.1988) (interpreting *Timbers* to allow adequate protection payments over time, "but only to the extent necessary to protect such creditors from a

*decrease in the value* of their collateral during the pendency of the case.").

 Although this court cannot say that the bankruptcy court did not consider the effect of *Timbers* in reducing the percentage of payment from 25% to 18%, neither is it evident on the face of the order, or from a review of the record, that it did. The case is therefore REMANDED to the bankruptcy court to reconsider the ramifications of the *Timbers* decision in light of the above discussion. IT IS SO ORDERED.