**In re Joseph and Sandra SCHAITZ, Debtors.**

**Appeal of Gwenn L. WEBB and Colton Webb.**

**No. 90–1577.**

United States Court of Appeals, Seventh Circuit.

Argued July 12, 1990.

Decided Sept. 20, 1990.

Jerome A. Tepper, Tabak & Tepper, Milwaukee, Wis., for appellants.

Jeffrey Schelble, Dubin, Balistreri, Fuchs & Schelble, Milwaukee, Wis. and Thomas J. King, Oshkosh, Wis., for debtors-appellees.

Before CUDAHY and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

The Webbs, who are unsecured creditors of the Schaitzes, appeal from a judgment of the district court upholding the bankruptcy judge's confirmation of the Schaitzes' Chapter 13 plan. The Webbs complain that the bankruptcy judge did not make adequate findings concerning the good faith of the Schaitzes in proposing the plan that the judge confirmed.

In 1986 the Schaitzes sold their house to the Webbs for $58,000 and used the proceeds to buy the house in which they now live. When the Webbs moved into the house that they had just bought from the Schaitzes, they discovered a serious problem of flooding in the basement. A contractor told them it was a problem of long standing. The Webbs sued the Schaitzes, claiming fraud. The suit was still pending when, in 1988, burdened by the costs of the litigation instituted by the Webbs, the Schaitzes filed a petition for bankruptcy under Chapter 7. The filing of the petition automatically stayed the Webbs' state court suit, 11 U.S.C. § 362(a), which they then refiled as an adversary proceeding in the bankruptcy court. In 1989 the bankruptcy judge, finding that the Schaitzes had indeed defrauded the Webbs, entered judgment for $12,328 in favor of the Webbs and in addition ruled that this judgment debt was not dischargeable in bankruptcy.

Two months later the Schaitzes filed a petition for bankruptcy under Chapter 13; their right to convert their Chapter 7 bankruptcy to a Chapter 13 bankruptcy is (rightly) not questioned. 11 U.S.C. § 706(a); *In re Martin*, 880 F.2d 857 (5th Cir.1989). The Chapter 13 proceeding was assigned to a different bankruptcy judge, who confirmed the Schaitzes' plan over the Webbs' objection. The plan listed two debts (apart from a home mortgage not encompassed by the plan): the $12,328 that the Schaitzes owed the Webbs and $2,440 that they owed their lawyer for handling the Chapter 7 bankruptcy. The plan proposed to pay out of the Schaitzes' wages, over five years (the maximum possible under Chapter 13, 11 U.S.C. § 1322(c)), a total of $6,000 toward the retirement of these debts. At the end of the five years the Schaitzes would be discharged from any further liability. Hence the Webbs could expect to receive less than half the debt that had been ruled non-dischargeable in the Chapter 7 proceeding; and besides, payment would be spread over five years, without interest (11 U.S.C. § 502(b)(2); H.R.Rep. No. 595, 95th Cong., 1st Sess. 352–53 (1977)), U.S.Code Cong. & Admin.News 1978, p. 5787, making the present value of the plan to the Webbs even less.

■ Chapter 13 provides, for individuals, a counterpart to Chapter 11 of the Bankruptcy Code, which authorizes the reorganization of bankrupt enterprises in lieu of their liquidation. Instead of the trustee's seizing and selling the bankrupt's non-exempt assets, as in a Chapter 7 proceeding, under Chapter 13 (as under Chapter 11) the bankrupt proposes a plan for the repayment of his debts out of future income. Sometimes the plan is in the creditors' own best interests, but even if they object to it the bankruptcy judge can cram it down their throats. 11 U.S.C. § 1325(a)(5)(B). He can do so however only if the plan is in "good faith," § 1325(a)(3), a term neither defined in the statute nor discussed in the legislative history. The term is a familiar one in bankruptcy law, *In re EDC Holding Co.*, 676 F.2d 945 (7th Cir.1982); *In re Little Creek Development Co.*, 779 F.2d 1068, 1071–72 (5th Cir.1986), as in law generally, but it bears different meanings in different legal settings. For example, despite the parallelism between Chapter 11 and Chapter 13 and the identical "good faith" language in both, 11 U.S.C. § 1129(a)(3); *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir.1984), it is apparent from a comparison of decisions under the two statutes (e.g., *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), with *In re LeMaire*, 898 F.2d 1346 (8th Cir.1990) (en banc)) that the issue of good faith is different under them, because the motives of individuals and of corporations in invoking their respective "reorganization" rights are different. We have said, perhaps not as helpfully as we might have, that good faith under Chapter 13 depends on the "totality of the circumstances," and we have enumerated a number of those circumstances of which the most fundamental and encompassing is whether the debtor has dealt fairly with his creditors. *In re Smith*, 848 F.2d 813, 817 (7th Cir.1988); *In re Rimgale*, 669 F.2d 426, 432–33 (7th Cir.1982). Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them? "[A] sincere effort at repay-

ment" is a sine qua non of good faith. *In re Caldwell,* 895 F.2d 1123, 1126 (6th Cir. 1990).

■ The bankruptcy judge noted that the Schaitzes had made an accurate disclosure of their debts, assets, income, and expenses in their Chapter 13 petition and that the amount they proposed to pay under the plan, $100 a month, was the limit of their ability to pay out of future income, given the modesty of that income—less than $2,000 a month—and the Schaitzes' other, irreducible expenses (they have two children). All this was relevant to good faith, certainly, but it left out of consideration the question whether the plan could be said to be a sincere effort at repayment, or was instead an effort to thwart repayment.

It is true as the Schaitzes emphasize and the bankruptcy judge and the district judge noted that a Chapter 13 plan is not in bad faith merely because among the debts sought to be paid in part and discharged as to the balance is a debt nondischargeable in a Chapter 7 proceeding. *In re Smith, supra,* 848 F.2d at 818; *In re Chaffin,* 816 F.2d 1070, 1074 (5th Cir.1987), modified, 836 F.2d 215 (1988) (per curiam). This conclusion is entailed by the fact that the exceptions to discharge are narrower in Chapter 13 than in Chapter 7. (For a dramatic illustration, see *Pennsylvania Dept. of Public Welfare v. Davenport,* —— U.S. ——, 110 S.Ct. 2126, 2129, 109 L.Ed.2d 588 (1990).) And not by inadvertence, either. The very purpose of Chapter 13 is to allow the bankrupt to pay his debts, in part anyway, out of future income, potentially to the benefit of his creditors. H.R.Rep. No. 595, *supra,* at 118. That purpose would be ill-served by a rule that deprived the bankrupt of any incentive to propose a plan that covered a nondischargeable debt, because the only possibility of collecting the debt might be out of future income rather than current assets. *Id.* at 129. It is more than a possibility. The bankrupt is not likely to emerge from a Chapter 7 bankruptcy with assets upon which the holder of a (nondischargeable) debt against him can levy. The purpose of making a debt nondischargeable in bankruptcy is to enable satis-

faction of the debt out of the debtor's future income rather than allowing the debtor to wipe the slate clean; and a Chapter 13 plan may, in particular though not all circumstances, provide a more secure method of applying future income to such a debt than if the creditor were left to rely on garnishment and other collection procedures provided by state law. Where this is so, the creditors will actually benefit from the fact that Chapter 13 covers debts nondischargeable under Chapter 7.

The analysis is not necessarily overthrown merely because the debtor may have *only* debts nondischargeable in a Chapter 7 proceeding (which as a matter of fact is not the case here). You cannot get water from a stone. The creditors may prefer an order under Chapter 13 to a garnishment proceeding under state law, even though, in Wisconsin anyway, the garnishment order, unlike a Chapter 13 order, would not be limited to five years and would carry interest (which could have the effect of extending the period indefinitely). Wis.Stat. §§ 812.01 *et seq.,* 815.05(8); *Eau Claire National Bank v. Chippewa Valley Bank,* 124 Wis. 520, 102 N.W. 1068 (1905). And if the creditors do prefer to go the garnishment route, and the Chapter 13 plan is crammed down their throats, this is just an illustration of the Bankruptcy Code's tenderness (perhaps excessive, but that is not our business) for bankrupt debtors. It is true that in this case the Chapter 13 proceeding follows a Chapter 7 proceeding. At oral argument the Schaitzes' counsel acknowledged that their Chapter 13 proceeding could be characterized as a collateral attack on the finding that the debt to the Webbs is not dischargeable. The original bankruptcy proceeding was precipitated by the Webbs' suit, and was an effort to shield the Schaitzes' assets from that suit. That effort failed when the bankruptcy judge upheld the Webbs' claim and ruled that the resulting judgment debt was not dischargeable. But meanwhile the Schaitzes had invested the proceeds of the sale of their house to the Webbs—a sale made possible by fraud—in the purchase of a new house. They may have feared losing the house if the Webbs attempted to collect

the debt, although such a fear would probably be groundless in light of Wisconsin's generous homestead exemption. Wis.Stat. § 815.20(1). Maybe they just feared a garnishment order that would have no limit of time and would bear interest. At all events they resorted to Chapter 13, filing their petition under that chapter just two months after the bankruptcy judge had ruled that their debt to the Webbs was not dischargeable. Of course the Schaitzes' Chapter 13 plan does not contribute the Schaitzes' equity in their new house to the pool of assets available to the creditors, primarily the Webbs. The effect of the plan if confirmed would be to discharge a nondischargeable debt, albeit in part only—the part that exceeds the present value of the payments to the Webbs out of the Schaitzes' future income that the plan requires, but this is most of the debt—and to defeat whatever remedies the Webbs might have under state law.

The Webbs argue that a Chapter 13 plan whose sole object is to discharge all or most of a nondischargeable debt is not in good faith. No case so holds, though *In re Chinichian*, 784 F.2d 1440, 1445–46 (9th Cir.1986), a case involving the use of Chapter 13 to save a home, is similar to ours, and found bad faith. And *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir.1986), says that the requirement of good faith should not be interpreted to permit "manipulation of the statute [Chapter 13] by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a nondischargeable debt." There is similar language in a number of other cases, illustrated by *In re LeMaire, supra*, 898 F.2d at 1351–53; *In re Rasmussen*, 888 F.2d 703 (10th Cir.1989) (per curiam); *In re Chaffin, supra*, 836 F.2d at 216, and *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982). These cases stand for the proposition that Chapter 13 is not properly used for the sole purpose of discharging an otherwise nondischargeable debt, a purpose made transparent by the sequence of events in this case. Maybe there is more to the Schaitzes' plan than meets the eye—they did after all owe money to their lawyer as well as to the Webbs—but the opinions of the bankruptcy judge and of the district judge make nothing of this. Instead the opinions emphasize that a plan is not per se in bad faith because it contemplates the eventual discharge of a debt not dischargeable under Chapter 7. This is correct, as we have said, but we miss a discussion in the two judges' opinions of the circumstances in this case which suggest that discharging a nondischargeable debt may have been the plan's sole raison d'être and that there is no benefit to the major creditors over and above what they might hope to obtain under state law, and probably a detriment.

The cases that we have cited which insist on a broader meaning of good faith than that employed by the bankruptcy judge and district judge in this case—which suggest in fact that a purpose of discharging a nondischargeable debt may taint a Chapter 13 plan irrevocably—may be wrong. We said earlier that the fact that a bankrupt's only debts might be debts not dischargeable under Chapter 7 should not automatically prevent the approval of the Chapter 13 plan. Suppose that the Schaitzes, better advised by counsel than they were, had filed under Chapter 13 in the first place and had offered—as the bankruptcy judge thought they *have* offered—a plan as generous as is consistent with their irreducible obligations to their children, except that it terminates after five years. Would they be doing anything more than enforcing legal rights clearly and deliberately conferred on them by the statute? If so, how could they be thought to be acting in bad faith? Is the present case any different from our hypothetical case, when we consider the statutory right to convert a Chapter 7 to a Chapter 13 proceeding at any time? Or, on the other hand, should a demanding concept of good faith be viewed as the *quid* for Chapter 13's *quo* of allowing otherwise nondischargeable debts to be discharged? On this view, which seems implicit though nowhere articulated in the cases we have cited, the right to discharge an otherwise nondischargeable debt through a Chapter 13 proceeding is a privilege to be granted

or denied by the bankruptcy court in the exercise of an informed discretion. The conflict between the two views of good faith that we have just sketched evokes the perennial issue of the proper balance between rules and discretion in the administration of law.

This court has yet to take sides on the difficult question of the proper meaning to assign "good faith" in Chapter 13, and we are disinclined to do so in this case, considering the starkness of the record before us. The inadequacy of the bankruptcy judge's findings—he seems implicitly to have confined the good-faith inquiry to the question of the Schaitzes' ability to pay on a monthly basis, and to have ignored the possibly (we do not say certainly) relevant question whether it was inequitable in the circumstances to allow them to take advantage of the five-year cut-off and such other benefits as Chapter 13 may confer on them— may reflect the fact that the Webbs were denied an opportunity for an evidentiary hearing on the issue of good faith. This denial came about as follows. The plan was originally confirmed at a hearing at which neither the Webbs nor their lawyer or other representative were present. The lawyer later advised the bankruptcy judge that he had not received notice of the hearing, and asked for reconsideration of the confirmation. The judge agreed to reconsider, but the forum for reconsideration turned out to be a hearing at which only lawyers were present. So there was no opportunity to explore such possibly pertinent factual questions as the Schaitzes' motives in filing the Chapter 13 petition. (Were they just trying to hold on to as large as possible a share of their ill-gotten gains from defrauding the Webbs?) As a result, not only are the bankruptcy judge's findings incomplete but so is the record. We therefore remand for an evidentiary hearing, *Allen v. Seidman*, 881 F.2d 375, 381 (7th Cir.1989); *In re Taxman Clothing Co.*, 905 F.2d 166, 171 (7th Cir.1990), as well as complete findings, regarding the issue of good faith. We reserve for future consideration—whether in a subsequent appeal in this case or in another case—what we have been at pains to emphasize is the difficult question, unanswered in this circuit, of the precise meaning of that term under Chapter 13.

V<small>ACATED</small> <small>AND</small> R<small>EMANDED</small>, <small>WITH</small> D<small>I</small>-<small>RECTIONS</small>.