**FIRST UNITED SAVINGS BANK,**
Creditor/Appellant,

v.

**Elizabeth Ann EDWARDS,**
Debtor/Appellee.

Cause No. IP 94–520–C.
Bankruptcy No. IP 93–4334–RWV–13.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 28, 1995.

Robert A. Hutchens, Danville, IN, for creditor/appellant.

Edward B. Hopper, II, Bamberger & Feibleman, Indianapolis, IN, for debtor/appellee.

### *ORDER*

McKINNEY, District Judge.

This cause pends before the Court on the appeal by First United Savings Bank (the "Bank") of the Order of the Bankruptcy Court confirming a Chapter 13 plan (the "Plan") for appellee, Elizabeth Ann Edwards ("Edwards"). Specifically, the Bank objects to the Bankruptcy Court's refusal to grant its motion to dismiss the Plan, which the Bank filed based on its view that it should be treated as a secured, rather than an unsecured, creditor by the Plan. In addition, the Bank appeals the bankruptcy judge's decision that the approved Plan was proposed in good faith. For the following reasons, this Court cannot affirm the judgment entered below, and therefore must **REMAND** the cause to the Bankruptcy Court for further proceedings and findings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this matter is substantially the same as that recited by this Court in its previous Order of January 14, 1993.[1] It will be summarized here for the sake of clarity. First United Savings Bank loaned money to Edwards and her business partner, Leonard Arthur Newman ("Newman"), to purchase furniture, fixtures, and equipment to be installed at their bakery business. Edwards and Newman together executed a promissory note, security agreement, and financing statement, pledging the furniture, fixtures, and equipment of the bakery as security for the loan. The Bank properly perfected its security interest. Edwards and Newman later defaulted on the loan, after which the Bank filed suit against them in state court, seeking foreclosure of its security interest in the loan collateral, and replevin of the furniture, fixtures, and equipment.

After suit was filed, Edwards and Newman disclosed that they had sold the loan collateral for an undisclosed amount of cash, to a person named Fred, who removed the collateral from Indiana. This transaction occurred without notice to or consent from the Bank, and without any release of its perfected security interest. The business partners kept no record of the transaction, but deposited the entire proceeds of the sale (an amount believed to be approximately $10,000.00) into an account in another bank and then spent it. They did not apply any of the proceeds toward the reduction of the Bank's loan balance. However, Edwards and Newman continued making payments on the loan under the false pretense that the loan continued to be fully secured, until the Bank filed its state court suit.

In the state court proceedings, Edwards and Newman admitted that they had contin-ued with their loan under false pretenses and had converted the loan collateral to other uses. They admitted that, but for their conversion, the Bank would have been entitled to immediate possession of the property.

Additionally, Edwards and Newman executed and filed a Debtors Affidavit and Stipulation for Immediate Entry of Judgment ("Affidavit and Stipulation"), which the state court approved and adopted as its findings of fact in the case. The Affidavit and Stipulation provided that "the judgment of the [state court] shall be a nondischargeable and unavoidable obligation of the Debtors in any and all bankruptcy, receivership, and insolvency proceedings," that "the filing of a certified copy of the Affidavit and Stipulation with any court of bankruptcy, insolvency, receivership or reorganization shall be res judicata as to all issues and shall be binding as a final determination on the merits of all matters," and that "the Debtors shall be estopped from denying the same." Affidavit and Stipulation at 2–3.

On August 18, 1989, the state court rendered judgment, jointly and severally, in favor of the Bank and against Edwards and Newman, in the sum of $26,569.23. This amount included reasonable attorney fees, costs, and interest.

Subsequently, Edwards and Newman each filed personal bankruptcy under Chapter 7 of the Bankruptcy Code. On February 26, 1991, the Bank filed an adversary complaint in each bankruptcy action, seeking a determination that the state court judgment was a nondischargeable debt under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). In both actions, the Bankruptcy Court granted summary judgment in favor of the Bank, holding that the state court judgment was nondischargeable under 11 U.S.C. § 523(a)(6).[2] The Bankruptcy Court ruled, however, that

---

1. That order was entered on two consolidated appeals from the United States Bankruptcy Court for the Southern District of Indiana, under the District Court Cause No. IP 92–843–C. Edwards' bankruptcy proceeding, under Cause No. IP 91–507–RLB–7, was one of the two cases consolidated for appeal.

2. 11 U.S.C. § 523 of the Bankruptcy Code states in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

the attorney fees, costs, and interest were not included in the amount deemed nondischargeable under § 523(a)(6). Summary judgment was entered for the Bank in the amount of $23,503.59—the unpaid principle balance of the promissory note on the date of default. After this Court's decision on the two consolidated appeals from the Bankruptcy Court's summary judgment rulings, the Bankruptcy Court issued a final order of nondischargeability that included attorney fees, costs, and interest.

In the above-described bankruptcy proceedings, the Bankruptcy Court determined that the Bank's judgment debt was nondischargeable because the stipulated judgment in the state court had provided that the debt owed the creditor "shall be a nondischargeable and unavoidable obligation of the debtor in any and all bankruptcy, receivership and insolvency proceedings ..." Edwards received a discharge of her remaining debts in her Chapter 7 case. The Bank returned to the Putnam Circuit Court of Indiana to collect the debt, after which Edwards filed a Chapter 13 petition and received an automatic stay.

Various Chapter 13 plans were filed with the Bankruptcy Court, all of which treated Edwards' debt to the Bank as unsecured. The plan that was confirmed found the debt to be unsecured and called for payment of $330 monthly for a period of thirty-six months.

The Bank appeals the confirmation of that plan for two reasons. First, it argues that it should be deemed a secured creditor in the Plan, and, second, it maintains that the Plan was not proposed in good faith.

## II. STANDARDS OF REVIEW

■ In reviewing a decision of the bankruptcy court, this Court acts as an appellate tribunal and is governed by traditional standards of appellate review. Specifically, the Court "is constrained to accept the bankruptcy court's findings of facts unless they are clearly erroneous." *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 n. 3 (7th Cir.1988); *In re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988). "A finding is clearly erroneous if upon review of the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Graham v. Lennington*, 74 B.R. 963, 965 (S.D.Ind.1987). "Generally, as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed." *Id.*

■ Conclusions of law made by the bankruptcy court, however, must be reviewed *de novo*. *Excalibur Auto. Corp.*, 859 F.2d at 457 n. 3; *Longardner & Associates, Inc.*, 855 F.2d at 459; *In re Rice*, 90 B.R. 386, 390 (N.D.Ind.1988). And, where the challenged finding is a mixture of law and fact, the clearly erroneous standard is also inapplicable. *Graham*, 74 B.R. at 965.

■ In this case, the parties do not dispute the facts. Rather, they disagree over whether, as a matter of law, the Plan was proposed in good faith and whether the Bank should be treated as a secured creditor under the Plan. Consequently, the *de novo* standard applies.

## III. DISCUSSION

The facts of the instant case are the same as this Court set out in the Chapter 7 appeal, with the only difference being that this is a Chapter 13 analysis. That is to say, the debtor has admitted the intentional, wrongful act of willfully converting the loan collateral of a fully secured creditor, and now wishes to be afforded the equitable protection of Chapter 13's super discharge.

### (A) SECURED OR UNSECURED

■ Edwards submits that the Bank should be treated as an unsecured creditor under this Chapter 13 case, just as she did in her Plan. Her argument is simple. Since the Bank has no security, it cannot be thought of or treated as if it did have security, no matter how the security disappeared. If the only analysis necessary and proper, to determine if a creditor is secured, is to assess whether the security exists, then Edwards would prevail even though she has admitted her wrongdoing.

This Court, however, can find nothing in the language of Chapter 13 that either pro-

hibits or demands an analysis of the circumstances surrounding the loss or disappearance of the collateral for a secured debt. Nevertheless, in a statutory scheme that depends on the rules of equity, a conclusion that Chapter 13 will reinforce a fraud seems incongruous. On the other hand, the purpose behind the super discharge of Chapter 13 is "to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." *In re Smith*, 848 F.2d 813, 816–17 (7th Cir.1988) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6079). Congress intended use of the bankruptcy laws to be a last resort, but if a debtor so chooses, "bankruptcy relief should be effective, and should provide the debtor with a fresh start." *Id.* at 817.

Chapter 13's super discharge provides for discharge of all claims through the vehicle of a Chapter 13 plan, except for certain tax debts, child support and maintenance, criminal restitution payments, certain fines and penalties, damages from drunken driving, and student loans. *See* 11 U.S.C. § 1328(a). There is no provision in Chapter 13 that prohibits a plan from providing, in its classification of a claim, for the forgiveness of a fraud. It appears, however, that Chapter 13 does not mean to vitiate the principles of equity which require a bankrupt to do equity. Nor should courts shy away from conducting an inquiry into the circumstances surrounding the acquisition of the debt or the nature of the debt. *See In re Love*, 957 F.2d 1350, 1356–57 (7th Cir.1992); *Smith*, 848 F.2d at 818; *In re Rimgale*, 669 F.2d 426, 431 n. 14 (7th Cir.1982). Even if a determination that the Bank is a secured creditor will not result in a significant difference in the structure of a Chapter 13 plan, a proper analysis as to whether the Bank should be so treated is necessary. If, after conducting the proper analysis, the Bankruptcy Court finds that the Bank should be considered a secured creditor, then the treatment of this debt as an unsecured debt by the debtor is a significant factor to be considered in the good faith analysis.

## (B) GOOD FAITH REQUIREMENT

The Bankruptcy Court discussed the good faith requirement when evaluating the Plan, acknowledging that *Smith* set out several questions to be considered in the Chapter 13 good faith inquiry. *Smith*, 848 F.2d at 817. The Bankruptcy Court wrote: "While not alone sufficient to constitute bad faith, a debt's nondischargeability under Chapter 7 arising from the debtor's pre-filing conduct is relevant to the issue." *In re Edwards*, Order Denying Motion to Dismiss, Cause No. IP 93–4334–RWV–13, Brf. of App't, App. M at 6. Thus, the Bankruptcy Court recognized that Edwards' conduct prior to the filing of her Chapter 7 petition was relevant to the good faith inquiry in her Chapter 13 filing.

The Bankruptcy Court also concluded that "there is no evidence that the debtor did not intend to pay the debt when incurred nor that this Chapter 13 is a part of the same conduct that rendered the debt to the bank nondischargeable." *Id.* at 8. Thus, for the Bankruptcy Court, the good faith inquiry stopped at the time the debt was incurred, skipped the actual admitted fraud, and then separated that fraud from the motivation for the Chapter 13 filing. Were those conclusions supported by recommended analysis, considering the indicated factors, this Court would be less hesitant to affirm the finding of good faith.

The Bankruptcy Court also treated the issue of whether the Bank should be deemed to be a secured creditor with one sentence. It determined that since there was no security left, there was no secured claim. No analysis or discussion of the conduct of the bankrupt which resulted in the absence of the security was undertaken. The Bankruptcy Court made two findings: 1) no evidence was available that could show that the bankrupt did not intend to pay the debt when she borrowed the money, and, 2) no evidence was adduced to show that the Chapter 13 plan was a part of the fraudulent scheme to deprive the Bank of its security. No other findings on the subject were made, nor was any other analysis or balancing undertaken.

The Bankruptcy Court did not take into account all of the factors required to determine whether Edwards proposed her plan in good faith. "The good faith requirement is one of the central, perhaps the most important[,] confirmation finding[s] to be made by the court in any Chapter 13 case." *Smith*, 848 F.2d at 817. The Bankruptcy Court's statement that no evidence supports a finding that the debtor did not intend to pay the debt when it was incurred, is both reasonable and well within that court's discretion. Edwards more than likely went into the bakery business with the usual optimism of a new business owner. Certainly, there is no evidence in the record that she went into the bakery business just to defraud the Bank. The record does, however, reflect, at Paragraph 8 of the Debtor's Affidavit and Stipulation, that "the debtors obtained an extension of their credit from plaintiff by such false pretenses and based upon debtors' false representations expressed and implied...." Thus, there is some evidence that while the debt itself was not entered into with any notion of defrauding the Bank, the renewal could have been.

The Bankruptcy Court cited the Seventh Circuit's opinion in *Smith*, a case in which the debtor had been found, by the Johnson County Circuit Court, to have operated a heating business in a fraudulent fashion and in violation of Indiana's Deceptive Consumer Sales Act, I.C. 24-5-0.5-1. As a result the court awarded the State a judgment against Smith in the amount of $48,748.00. Three months later Smith filed a Chapter 13 petition. The State's judgment constituted just over one-half of the total amount of unsecured debts Smith listed in his Chapter 13 plan. Smith's Chapter 13 plan provided for a total payout of less than 2% on the State's claim. *Id.* at 815. The State argued that the Chapter 13 filing was motivated by Smith's desire to avoid paying the State's judgment. The State supported its position by pointing to the following facts: Smith filed for Chapter 13 protection less than 100 days after the Johnson County Circuit Court entered judgment for the State; the State was the largest creditor; and the plan itself provided for a payout of less than 2% on the State's claim. The Bankruptcy Judge found that the plan

was proposed in good faith and excluded any evidence of how the judgment debt arose, concluding that such evidence was not relevant.

The Seventh Circuit held that the analysis of good faith in a Chapter 13 proceeding should be conducted on a case by case basis and by looking at the totality of the circumstances. *Smith*, 848 F.2d at 817 (citing *In re Rimgale*, 669 F.2d 426 (7th Cir.1982)). After analyzing whether the 1984 Bankruptcy Amendments and Federal Judgeship Act invalidated *Rimgale*'s totality of the circumstances test and relevant factors, the Seventh Circuit concluded that it did not. *Id.* at 819 (disagreeing with *In re Gathright*, 67 B.R. 384 (Bankr.E.D.Pa.1986)). The *Smith* court repeated the non-exhaustive list of relevant factors to be considered, among which was a consideration of whether the plan indicated a fundamental fairness in dealing with the creditors. *Id.* at 817. The *Smith* court cited with approval a footnote from *Rimgale*, explaining "fundamental fairness," that suggested, among other things, that "the Bankruptcy Court may wish to examine the timing of the bankruptcy filings, [and] the proportion of the total unsecured debt that is represented by the judgment...." *Id.* The Seventh Circuit noted the continuing vitality of "the proposition that 'debtors' motives in seeking Chapter 13 relief and 'the circumstances under which debts were incurred' are also relevant factors." *Smith*, 848 F.2d at 818. The Court went on to reject the notion that good faith only means full disclosure and an intent to make the proposed plan payments.

The bankruptcy court in *Smith* was instructed on remand to consider the circumstances under which the judgment arose, the debt's nondischargeability under Chapter 7, and the timing of the filings. "The Court should explore if and when Smith, when assessing his scheme's downside, relied upon the favorable prospect of using bankruptcy law to avoid repaying his fraudulently won gains." *Id.* at 821. Additionally, the bankruptcy court was to consider the proportion the debt owed to the State bears to the total debt and to the total unsecured debt. *Id.*

Since deciding *Smith*, the Seventh Circuit has been confronted again with the question of good faith in *In re Schaitz*, 913 F.2d 452 (7th Cir.1990). A judgment was rendered, pursuant to an adversary proceeding in the bankruptcy court, against the Schaitzes for fraud during the pendency of their Chapter 7 filing. The bankruptcy judge, upon entering the judgment, ruled that the judgment debt was nondischargeable. *Schaitz*, 913 F.2d at 453. Two months later the Schaitzes filed a motion to convert their Chapter 7 petition to a Chapter 13 petition. A Chapter 13 plan was filed, which provided for a payout of less than half of the judgment debt. The only other debt listed in the plan was for a Chapter 7 attorney fee. The bankruptcy court confirmed the plan and the district court affirmed that confirmation on appeal.

The Seventh Circuit, however, remanded for a more in-depth look at whether the plan was proposed in good faith. Reaffirming the validity of the "totality of the circumstances" test, the Seventh Circuit phrased the inquiry as whether the debtor "is really trying to pay the creditors to the reasonable limit of his ability or is trying to thwart them?" *Id.* Of all the circumstances that must be considered, Judge Posner wrote, the "most fundamental and encompassing is whether the debtor has dealt fairly with his creditor." *Id.* The court remanded the matter because there was no discussion in either opinion below "of the circumstances in [the] case which suggest that discharging a nondischargeable debt may have been the plan's sole raison d'etre and that there is no benefit to the major creditors over and above what they might hope to obtain under state law, and probably a detriment." *Id.* at 455.

In the instant case, Edwards agreed to a nondischargeable judgment on August 17, 1989. She filed her Chapter 7 petition in 1991, and on June 9, 1992, summary judgment was granted against Edwards on the issue of nondischargeability of the judgment debt. She appealed the court's exclusion of attorneys fees from the nondischargeable amount. The final entry of nondischargeability of the entire debt owed the Bank was signed by the bankruptcy judge on March 8, 1993. Edwards filed for relief under Chapter 13 just a little over two months later, on May 21, 1993, after the Bank had begun collection efforts in the state court. The Plan confirmed by the Bankruptcy Court provides for payment to the Bank of approximately two-fifths of the judgment debt. The debt to the Bank appears to be the only debt, besides the attorney's fees, listed in the Plan.

Nowhere in the Bankruptcy Court's analysis of this case is there a discussion of these facts as they relate to a good faith finding. Instead, the court below made the conclusory statement that there was no evidence to counter its finding of good faith. Additionally, the Bankruptcy Court offered the incorrect test. The issue is not whether the debtor intended to pay the debt when she incurred it, or whether she intended to mislead the Court. Rather, the issue is whether she was trying to pay her creditors to the reasonable limit of her ability or whether she was trying to thwart them. As the Seventh Circuit found in *Schaitz*, the Bankruptcy Court here likewise has not addressed these issues. The notion that good faith means only full disclosure and an intent to make the payments has been rejected.

 It is significant to note, also, that there are two good faith inquiries to be made. The first, pursuant to 11 U.S.C. § 1307(c), and, the second pursuant to 11 U.S.C. § 1325(a). That is, did the debtor file the Chapter 13 petition in good faith, and then did the debtor file the Chapter 13 plan in good faith. These inquiries are both conducted on a subjective and objective basis, and the same evidence may be relevant to both inquiries. *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir.1992). The requirement of good faith should not be interpreted to permit "manipulation of [Chapter 13] by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a nondischargeable debt." *Schaitz*, 913 F.2d at 455.

On the record as presented in this appeal, this Court finds that the incorrect test was applied in the good faith analysis, and certain facts were not properly considered. Therefore, the judgment of the Bankruptcy Court cannot be affirmed and the Court now **RE-**

MANDS this case to the Bankruptcy Court for further proceedings and findings consistent with this Order.

IT IS SO ORDERED.